Next case on the calendar is Hales v. Aspen Properties. Good morning, Your Honors. May it please the Court. Good morning, Your Honors. May it please the Court and Counsel. The District Court dismissed this FDCPA case that involves a series of communications that the plaintiff received concerning a single debt with each communication representing an inconsistent amount of the debt. This case involves three of these communications in particular. The first is the November 23, 2015, initial communication that the plaintiff received from Defendant Waldman. The complaint alleges that this communication fails to accurately state the amount of the debt as required by 1692G because it only states the amount to reinstate the debt. The District Court held that plaintiff failed to explain why the amount to reinstate the debt is not the total amount of the debt. The amount to reinstate the debt would not satisfy plaintiff's debt in its entirety. It would only bring the debt current whereby plaintiff would begin to resume making monthly payments to satisfy the debt. But the amount had not been, the loan had not been accelerated at that point. I don't, Your Honor, I don't think that's accurate. According to the November 28 letter, plaintiff's loan had not, plaintiff's last payment was in July 2011. Aspen, excuse me, Aspen G., the owner of plaintiff's debt who is not a party to this litigation, acquired plaintiff's loan in 2014. So at that point. There had been no action taken to accelerate. I mean, it was within the lender's purview, including the assignee of the lender, to continue to just accrue the payments as due and mount up the late fees. Acceleration is, it was vulnerable to acceleration, but the full amount hadn't come due and payable, had it? I believe that it had. The loan had been overdue by approximately four to five years. Was there any action taken to accelerate it? I don't have prior correspondence before Aspen G. acquired the loan. But Aspen, the complaint alleges that Aspen G., excuse me, that the loan was in default at the time it was acquired by Aspen G. And it was in default at the time that Aspen, excuse me, that Waldman was attempting to collect the debt. The reason I inquire about this is the complaint seems to, and the briefing seems to rely partly on the difference in amounts to argue that, for instance, the November amount must be incorrect because the subsequent amounts are much larger. But my memory of the November letter, I don't have it in front of me, is that that letter says, well, we may accelerate. This could be, this debt could be accelerated. And I'm not sure that the inference that the amount must be false because it differs from a later amount is all that compelling if the loan had not yet been accelerated. The November letter does represent that the loan had not been accelerated. However, at the time that Aspen G. purchased the loan, it purchased the entire loan. If a payment hadn't been made since, excuse me, since 2011 and Aspen G. purchased the loan in 2014, it's hard to fathom that a prior holder of the loan hadn't accelerated the loan in four to five years. So plaintiff alleges that at the time the loan, that at the time that Waldman was, sent the November 23rd, 2015 letter, Waldman had been retained to collect the full balance of the loan, not just the amount to reinstate that's represented in the November letter. It says that? It does not say that. Oh, so you surmise, and your client surmised, that this was going to be a debt collection. It doesn't say that in the letter, does it? I'm sorry, it doesn't state in the, and I'm sorry, can you clarify the question? Yeah, you said that we were talking about three different correspondents. That's correct. And they all have different amounts. And you say essentially that it's all the same things, right? It's a collection of a debt. And your adversary says that, well, no, these letters make different points. So I'm trying to understand what you're saying, the first letter. What point is made in the first letter? The first letter is an issue of communication that needs to comply with 1692G, which means it needs to state the total amount of the debt. Just talk about the letter itself. What does the letter say that you think is a problem? On page three, I'm sorry, the letter can be found at Plaintiff's Appendix 75. On page three of the Waldman letter, it states the total to reinstate. It gives a breakdown of installment payments, late charges, accrued late charges, attorney's fees, and costs. But it only states the total to reinstate. It does not state the total amount of plaintiff's debt. So what's wrong with that? It's an initial communication that's required to comply with 1692G, and as such, it needs to state the total amount of the debt. And the amount to reinstate would, if plaintiff paid the amount to reinstate, it would not satisfy his debt in its entirety. It would only put him in a position to resume making monthly payments, whereby he would proceed to satisfy the debt. But this letter does not tell plaintiff what he needs to pay to satisfy this debt in its entirety. And 1692G requires that it does. The next letter at issue is the June 22, 2016 letter that plaintiff received from Aspen Properties, which can be found at Plaintiff's Appendix 87. Plaintiff alleges that this letter fails to accurately state the amount of the debt, and it also does not contain a notice of debt. The district court held that this was not a communication in connection with the collection of a debt, relying on this court's decisions in the Hart and Carlin case. Can I ask you, the complaint alleges that it fails to communicate accurately the amount of the debt. This is the letter that says $72,830 and some cents. What is the basis for saying that that was not accurate? In Plaintiff's brief, there is a chart on page 6 that gives you an overview of all of the different communications that the plaintiff received within a 10-month period concerning this debt. The communications began with a representation that the debt is $58,000, then $54,000 in the November Waldman letter. Then the plaintiff was sued for an amount and also received a letter saying that the debt was $110,000. The letter at issue here says the debt is $72,000, and the final letter at issue in this case says the debt is $181,000. These numbers are very inconsistent, and they're not consistent with the regular progression or increase of a debt. So looking at the totality of the numbers, it's clear that this doesn't accurately state the amount of the debt. Okay, so the basis for saying that the amount stated in the June letter is false or wrong is that it's discrepancy with the letter that came afterwards and the letter that came before. As well as the foreclosure action, yes. The district court held that the- Can I ask you to address who is a debt collector in these circumstances? Your adversary argues that Aspen properties, and I believe Aspen G, are not debt collectors because Aspen G is the lender being accepted assignment. And although they didn't originate the loan, they have a shared ownership, and therefore they're not a debt collector. They challenge also that the law firm is a debt collector. But just putting that aside, does the Supreme Court's decision in Henson take you as far as you need to go here? Santander is a very different kind of organization that doesn't have as its principal purpose the collection of debts. And in Henson, they had just a small unit that acquired some defaulted debts and some not. It looks to me that Aspen G acquired this as part of its business model. It was already several years in default, and Aspen properties and Aspen G had joint ownership, and therefore they were not the typical debt collector that the FDCPA was targeting in my understanding. Could you help me on that issue? Your Honor, I do not believe that Henson is applicable here. The record does not reflect that there is an affiliation between Aspen G and Aspen properties. The only defendant in this case is Aspen properties. Aspen G, which is alleged to be the owner of plaintiff's debt, is not a party to this action. And what Aspen properties is effectively encouraging the court to do is pierce the corporate veil of Aspen properties, which is a separately incorporated LLC, as well as Aspen G, to convey upon Aspen properties a position that only Aspen G has. If the record were developed to show that they had a joint control, that as alleged, one is the general partner or a partner in the LLC, so they have common ownership, doesn't 1692K make them, doesn't it mean that their mutual control removes them from the purview of the debt collection definition? Is Your Honor referring to the affiliate exemption that the Aspen defendants advanced? Yeah. Let's see. It acts as a debt collector only for persons to whom it is related or affiliated. The principal business of the person is not the collection of debts. The affiliate exemption is not applicable to Aspen properties because, one, the record does not reflect that Aspen properties is an affiliate of Aspen G. Two, the record does not reflect that Aspen properties only collects debts for Aspen G. And the third element that's missing is that the amended complaint alleges that Aspen properties is in the principal business of debt collection. So as such, they do not satisfy the affiliate exemption as set forth in the FDCPA. Thank you. The district court held that the June 22, 2016 letter, Aspen was not a communication in connection with the collection of the debt, relying on this court's decisions in Hart and Carlin. This court's decisions in Hart and Carlin did not set forth an all-inclusive checklist by which all debt collection letters must comply. It said this court was merely analyzing the letters that were before it. The letter at issue here is clearly a form of debt collection. It states that the loan is in default. It states the plaintiff has failed to pay the loan. Sorry, what was the first? It states that the loan is in default. It states the plaintiff has failed to pay the loan. It purports to state an amount due. And it says this communication is from a debt collector. Correct. And any information will be used for that purpose. Correct. Did you want to reserve your three minutes of rebuttal, or do you want to take some now? I can take some now. Okay. I mean, you can reserve the full three minutes, or if you wanted to continue with that point, you could use some of them. I was going to address the third letter, but I can take the rebuttal. Why don't you address the third letter on rebuttal? Okay. Thank you. Thank you. Good morning, Your Honors. May it please the Court? I'm Kelly Kalahar. I represent both defendants' appellees, Aspen Properties Group and Waldman-Saginario & Associates. Now, really, this is a fairly simple case. The FDCPA requires . . . This is a what case? Fairly simple. At this point, we're talking about a motion to dismiss. The FDCPA requires a least sophisticated consumer standard. Now, what that means is that you cannot take the numbers outside of the context of the letters, as a plaintiff attempts to do. You can't simply take the numbers and the dates and put them in a chart together and say they all must be inconsistent, and, therefore, they all must be wrong. Why can't you? They do vary by dramatic amounts. For instance, why isn't it enough for the June 22nd letter to look at the amount of $72,000 and change and compare it to the August letter and infer from that that there's something wrong with the amount? Well, the June 22nd letter, first of all, is an offer of settlement. It's dated several months beforehand. And as any least sophisticated consumer would understand, that if you don't pay off a debt and the debt has interest on it, that that amount will increase accordingly, every month, every day, according to the interest rate that's put on there. Similarly, the first letter, the Waldman letter, as Your Honor put out, the demand letter, contains the amount to reinstate the debt. Now, at that point, as Your Honor noted, there is no evidence to show that the debt had been accelerated. So you have the first letter that states the amount to come current or reinstate, which Judge Livingston just recently found to be perfectly compliant with the FDCPA, and Kolbasiuk v. Capital Management decided a few months ago. You move on. After the foreclosure, the debt has been accelerated by the foreclosure action itself. We have two communications, the first being an offer of settlement. Now, the first problem with this is it's an offer of settlement of a foreclosure action, typically holding- Of a what action? Of a foreclosure action. Thank you. Absolutely. To take a good faith offer of settlement and use that as proof that a lender is violating the FDCPA, that's troublesome. It's going to have a chilling effect on future foreclosure actions with lender putting in offers of settlement, particularly in writing. It's not an initial communication as well, which is disputed. Given the fact that Waldman sent out the demand letter, that is for sure an initial communication. Aspen Properties Group, as alleged in not plaintiff's complaint, but in the motions to dismiss and in future litigation further on, Aspen Properties Group is the sole member and managing member of Aspen G. So the fiduciary relationship between the attorney and Aspen G as an agent should move forward into Aspen Properties as well. Isn't the import of that argument that all law firms doing collections work are exempt from the FDCPA? How could that possibly be so? No, Your Honor, that's not the case at all. Why is that? Don't all law firms have a fiduciary responsibility to their clients? Yes, Your Honor, they do. What we're pushing for is that not all clients are debt collectors. There are plenty of clients out there. Loan servicers are clearly considered to not be debt collectors. The repo man that everyone's concerned about in the FDCPA are not debt collectors. The attorney should have the exact same status of debt collector as the client. Now, this has also been held in several of the sister circuits, the Eleventh Circuit and the Fifth Circuit, for example. You're saying that the client was the creditor. That's correct. And that because it was the creditor, not a debt collection company, that any lawyer working for it is not a debt collector. That's our contention, yes. And that's actually consistent with the additional exemptions in the FDCPA for employees and owners. So what you have is an inconsistency between a large company like Bank of America, where a substantial amount of its business is collecting debts, who has in-house counsel. That in-house counsel pursuing foreclosure for them would be exempt under the employee exemption, whereas outside counsel would not be. It's inconsistent. If it's a failure, isn't that just a failure of the statutory language? I guess I'm not seeing how, understanding the policy argument you're making, how that triggers the 6F exception. The 6F exception has the bona fide fiduciary obligation. So what we're saying is that even though you don't have that in-house counsel privilege that would come in under the employee, that Congress would not have intended to exempt outside counsel doing the exact same thing as inside counsel for the same entity. Therefore, writing in this fiduciary obligation would have been Congress's way of remedying that inconsistency. Perhaps not as clearly as we would like, but it's there nonetheless. The problem I'm having is with that word, incidental, because the collection here doesn't, and maybe I'm misreading the statute, but the collection here doesn't seem incidental to the fiduciary obligation. It's essentially what the lawyer is hired to do. In part, yes. The lawyer is hired to do the foreclosure, but part of that is also a matter of advising the clients on other things. For example, Waldman will routinely advise Aspen as far as the due diligence before they purchase a loan. They'll advise whether or not to foreclose. They'll advise whether or not to send demand letters, legal issues regarding it. The fact of the matter is the party hasn't litigated the principal purpose test of this, so really we're only looking at the Henson argument at this time. And that's the same as in the Henson case. Now, in Henson, Santander, the court suggested in dicta that Santander would not have met the principal purpose test as well. However, the parties had not litigated that at that time, which is why the Henson court reduced its holding to simply under that second portion of the test, and we're asking the court to do the same thing here. Can I ask another different question? In the August 1, 2016, communication from the law firm, from Waldman to Mr. Hales, the payoff statement, which it's called, identifies the late fees as $1,324.32, and I understood the late fees were $16 for every some period. I don't know what period. I have difficulty understanding how this could be a correct figure. Could you explain to me how it could be? Yes, Your Honor. Waldman is not a loan servicer, so Waldman does not have access to the loan payment histories or figure out how the loan servicer is calculating that amount due. The payoff letter is actually created based upon the records of the lender and the loan servicer at that time. So when Waldman received those figures, it translated those figures verbatim into another letter, the payoff letter. Does Waldman have any duty to verify the correctness of those figures? I mean, when there seems to be a facially incorrect number. Waldman does not have a duty to do that, actually. Waldman, at this point, has a duty to obey its client's wishes, which in this case was to send a payoff letter at Mr. Hales's request to him, showing the amount of the debt as of the lender's records due as of that date. Surely the fact that he requested it doesn't immunize them from any consequences of giving an incorrect figure. No, Your Honor, it does not.  Your Honor, we're not conceding anything based upon what has been argued in the complaint. I think further discovery would be needed. However, if the figure is in fact correct, the FDCPA contains another exception for liability for bona fide error. If something had happened where somebody clicked a wrong number and applied the wrong type of late charges to the debt, despite the rules set to prevent such a thing, then the bona fide error exception would also take care of that. So why isn't this apparently facial error enough to have the complaint survive a motion to dismiss? Your Honor, the biggest problem with both the complaint and the amended complaint is that it's not pled as facts. Almost all of the allegations are pled as legal conclusions, which the court does not have to accept as true. But didn't the complaint include these communications, either implicitly or explicitly? Doesn't it incorporate these communications that we've been discussing? Yes, it does. And the court, based on its own reading, is free to determine whether or not each of those would be confusing or insufficient based upon the least sophisticated consumer standard, rather than taking the facts as true, because they were pled as legal conclusions and not facts. Can I just ask again about the August 1st letter? Because I was reading the complaint to suggest that there might perhaps there's enough here to infer a mistake based on the simple math, but I didn't know that late charges and late fees are the same thing. And so, for instance, late fees can accrue to other insurance charges, service charges, payment of the accelerated principal. The fee amount, the late charge was the $16 a month fee. Am I misreading that concept? Is there a distinction between late charges and late fees? No, Your Honor. They are the same, although they can apply, depending on the note terms, to other things besides just the late payment. Many notes also- I guess that's my question. Does late charge and late fee, do both of those phrases in the context of this complaint refer to the $16? The only thing that it could be is the $16 a month charge? Unless those fees are also applied according to the mortgage, there may be a different rate there that applies. There's also a provision in the contract that states that after the first ten years where they can draw, that some of those terms will change. And you would have to look at the note clearly to ensure that that late charge remains the same as well. Thank you, Your Honors. To address some of the issues raised by counsel, Waldman does have a responsibility and a duty to accurately, if they're going to undertake sending a collection letter, it should be accurate. With respect to a distinction between late charges and late fees, the question would be would a least sophisticated consumer know that distinction? I don't believe objectively a least sophisticated consumer would look at a letter that represents late charges or late fees and infer that to be something distinct from late charges. With respect to counsel's assertion of a bona fide error defense, a bona fide error defense is a factual question that's determined after liability has been determined. At this juncture, we haven't advanced beyond the initial pleadings, so it would be premature. Plaintiff would be entitled to discovery on an issue of bona fide error. And again, it would require a finding of liability. And just to go back to the inconsistencies represented in the letters, if we look at Plaintiff's Appendix 87, which is the Aspen Properties June 22, 2016 letter, it states that the total amount of the debt due is $72,830.96. However, page 2 says this offer also includes a discounted payoff settlement offer of $80,000. So apparently the offer of settlement is more than the amount of the debt. This just further exemplifies the inconsistencies and the numbers that are in the communications that plaintiffs received. Can you just explain, addressing the August 1st letter, the basis for concluding that the late charges are inaccurate in that letter? Yes. The basis for concluding that the late charges are inaccurate is . . . Excuse me just one second. So I'm looking at the August 1 letter. And it's appendix . . . And it says unpaid loan charges. I don't see late charges. Late fees. Late fees. I apologize. I apologize. The August 1st, the reasons for concluding that the amount of late charges is inaccurate is, first, the amount sought, $1,324.32, is not a multiple of 16. But moreover, if you look at the Waldman November 23rd letter, which is found at Plaintiff's Appendix 75, it states that the total amount of late charges or late fees is $800. Here, the amount of late fees has increased by a total of $524.32, which would be inconsistent for a 10-month period between November 23rd and September 29th. That wouldn't be consistent with late fees accruing in the amount of $16 per month. And I take it that the loan documents don't provide that interest can accrue on accumulated loan charges or late charges. Is that right? I would need to check. I don't know at this moment. Does Your Honors have any further questions? Thank you. Thank you both, and we'll take the matter under advisement.